UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LY BERDITCHEV, CORP.,** | Civ. No. 22-04242 (KM) (CLW) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **TRUSS COSMETICS CORP. and LOMA LICENCIAMENTO DE MARCAS LTDA,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This dispute arises out of the defendants' submission of purportedly false reports of trademark infringement to online retailer Amazon. The plaintiff has sued the defendants for submitting false reports to Amazon once already; that litigation was settled in April 2021. In June 2022, however, the defendants allegedly submitted additional false reports of trademark infringement to Amazon, which resulted in the removal of some of the plaintiff's product listings from the Amazon marketplace. The plaintiff brought this action in response, and the defendants have moved to dismiss the complaint. (DE 10.)[1] For the reasons set forth below, the motion to dismiss is **DENIED**.

---

[1]     Certain key items from the record will be abbreviated as follows:

DE = Docket entry in this case

Compl. = Complaint (DE 1)

Mot. =  Defendants' brief in support of motion to dismiss (DE 10-1)

Opp. = Plaintiff's rief in opposition to motion to dismiss (DE 13)

Resp. = Defendants' reply brief in further support of motion to dismiss (DE 16)

## I.   Background

Defendant Loma Licenciamento De Marcas ltda ("Truss Brazil") is a business entity organized and existing under the laws of Brazil. (Compl. ¶15.) Truss Brazil manufactures and distributes hair care products, including products sold under its registered trademarks. (*Id.* ¶2.) Defendant TRUSS Cosmetics Corp. ("Truss USA") is a Florida-based subsidiary of Truss Brazil. (*Id.* ¶14.) Truss USA distributes trademarked Truss products in the United States. (*Id.* ¶3.)

Plaintiff LY Berditchev, Corp. ("LYB") is a New York corporation with a principal place of business in New Jersey. (*Id.* ¶13.) LYB's business consists of purchasing consumer goods and reselling them at a profit. (*Id.* ¶29.) LYB resells products through various channels, including its storefront on the Amazon marketplace. (*Id.* ¶4.) LYB has sold products through its Amazon storefront to hundreds of thousands of consumers. (*Id.* ¶31.)

The complaint alleges that in early 2021, Truss Brazil and Truss USA (collectively, "Truss") submitted false reports to Amazon alleging that LYB's sale of Truss products on Amazon violated Truss Brazil's trademark rights. (*Id.* ¶6.) According to LYB, Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not. (*Id.* ¶61.) An intellectual property owner who submits a complaint to Amazon must declare under penalty of perjury that the information contained in the complaint is correct, but the company does not independently verify the accuracy of the complaints it receives. (*Id.* ¶¶62, 68.) LYB claims that it only sells lawfully acquired, authentic Truss products through its Amazon storefront and thus its sales do not violate Truss's intellectual property rights. (*Id.* ¶¶58-59.)

In response to the reports submitted by Truss, LYB earlier sued Truss in this district for defamation, tortious interference with business relations, and trade libel. (*Id.* ¶¶7-8.) *See LY Berditchev Corp. v. Truss Cosmetics Corp. et al,* 2:21-cv-03420. The parties entered into a settlement agreement to resolve that dispute in April 2021. (*Id.* ¶9.)

2

As relevant here, the settlement agreement provides that Truss would "(1) forever cease submitting, directly or indirectly, Reports to third-party marketplaces, including Amazon, concerning LYB, LYB's listings for Truss Products, and/or Truss products sold by LYB; and (2) prevent its agents, attorneys, licensees and distributors from submitting, directly or indirectly, such Reports." (*Id.* ¶36.) A liquidated damages clause in the agreement requires Truss to pay LYB $50,000 per violation of that obligation. (*Id.* ¶37.)

On June 8, 2022, more than a year after the parties settled the prior litigation, LYB received a notice from Amazon stating that Amazon had removed its listings for a Truss product because of a report that "they may violate the rights owner's intellectual property." (*Id.* ¶¶70-71.) Counsel for LYB contacted counsel for Truss the following day to discuss the notices in relation to the 2021 settlement agreement. (*Id.* ¶82.) Counsel for Truss took the position that the filing of the complaints referenced in the notices did not violate the terms of the settlement agreement because the complaints did not target LYB specifically. (*Id.* ¶83.) LYB received another message from Amazon two days later notifying it that its listings for a different Truss product had been removed based on a report of intellectual property infringement. (*Id.* ¶76.)

LYB alleges that the "false reports are part of an ongoing and continuous course of conduct by [Truss] to interfere [with LYB's] ability to resell Truss products." (*Id.* ¶81.) Moreover, according to LYB these efforts have succeeded. LYB's listings for certain Truss products have been suspended, resulting in an immediate loss of revenue. (*Id.* ¶86.) The complaints have also damaged LYB's metrics and caused it to lose the Amazon "buy box" feature, which allows consumers to add a product to their cart directly from the product page, on many of its product listings. (*Id.* ¶97.)

LYB commenced this action in June 2022, seeking monetary and injunctive relief, as well as a declaratory judgment. The complaint raises claims of breach of contract, defamation, and tortious interference with business

relations. In August 2022, Truss moved to dismiss the entire complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Legal standard

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of resolving a Rule 12(b)(6) motion to dismiss, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

The Federal Rules of Civil Procedure do not require that a complaint contain detailed factual allegations. *See* Fed. R. Civ. P. 8(a). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570. That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.  Discussion

### A. Breach of contract

Count 1 of the complaint alleges that Truss violated its obligation under the settlement agreement to cease filing reports to Amazon "concerning [LYB],

[LYB's] listings for Truss products, and/or Truss products sold by [LYB]." (Compl. ¶44.) Truss argues that this count should be dismissed because the complaint shows that the reports submitted by Truss to Amazon in June 2022 were not specific to LYB or LYB's listings for Truss products. (Mot. 18-21.)

Much of Truss's argument is premised on more than ten pages of background information it included in its moving brief regarding the Amazon platform and Amazon's policies for third-party sellers. (Mot. 1-16.) This information is extrinsic to the complaint and cannot be considered at the motion to dismiss stage. *Cf. In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (discussing the "narrowly defined types of material" a court can consider on a motion to dismiss). Nonetheless, because Truss's argument is more comprehensible in light of this background information, I will provide a brief summary here.

According to Truss, every product sold on the Amazon platform has a dedicated "Product Detail Page" ("PDP"), and each PDP is associated with a unique Amazon Standard Identification Number, or "ASIN." (Mot. 1-2.) Amazon does not allow multiple ASINs for the same product to exist on its platform, nor does it allow a specific product to be sold on the Amazon platform anywhere aside from the product's dedicated PDP. (*Id.*) As a result, every third-party seller who wishes to offer a specific product must list its offer on the same PDP and associate it with the same ASIN. Pursuant to Amazon's "Duplicate ASIN creation policy," creating a new ASIN when the product already exists in Amazon's catalog is prohibited and can result in a seller's privileges being temporarily suspended or permanently removed. (*Id.* 3.)

Truss claims that it recently learned that an unknown party had created "duplicate listings" for nineteen Truss products sold on Amazon. (*Id.* 5.) In other words, Truss products were apparently being offered on Amazon under ASINs that were duplicative of preexisting ASINs for those products, in violation of Amazon's "Duplicate ASIN creation policy." According to Truss, when a rights owner reports allegations of trademark infringement to Amazon, the owner has the option of reporting a specific third-party seller offer or just reporting the

offending PDP/ASIN. (*Id.* 9.) Truss claims that the reports it submitted in June 2022 cited the entire PDP/ASIN for nineteen Truss products, rather than targeting LYB's offers for any of those products. Consequently, Truss argues, LYB has failed to plausibly allege that Truss breached its obligations under the settlement agreement. (*Id.* 12.)

Although Truss insists that the complaint "clearly shows that the actions taken by Truss were not specific to" LYB, that is far from clear. (Mot. 18-19.) Truss points out that the notifications LYB received from Amazon regarding the reports, which LYB reproduced in the complaint, contain what is referred to as "[t]he rights owner communication about the alleged violation." That section of the notifications reads as follows:[2]

> Rights owner communication:
> The identified listings are using our client's trademark unlawfully in the title and descriptions.
> ASIN: B08B4VCFLX
> Violation type: Intellectual property (Product Detail Page, Product Packaging, Word Mark, Logo & Design)
> Intellectual property number: 4738823
> Complaint ID: 10193520851

(Compl. ¶¶70, 76.) Truss argues that the "rights owner communication" section of the notifications demonstrates that the reports Truss submitted to Amazon pertained to an entire product detail page, rather than a specific seller's listing. (Mot. 19.) That is not self-evident, however. The notifications refer to "identified listings" as well as "Product Detail Pages." In addition, the notifications state elsewhere that Amazon "received a report from a rights owner *alleging* that one or more of [LYB's] *listings* may be violating the intellectual property rights of others." (Compl. ¶¶70, 76.) (Emphasis added.)

In the absence of a developed factual record concerning Amazon's report-filing policies and infringement notification procedures, I cannot say whether Truss's interpretation of the notifications are correct, i.e. whether Truss

---

[2]     The notifications LYB received on June 8, 2022 and June 11, 2022 are almost identical, except for the ASINs and Complaint IDs listed.

reported entire PDP/ASINs for infringement or whether Truss targeted LYB's listings. Resolution of this issue requires discovery.

In any event, even if Truss did report entire product detail pages for trademark infringement and did not identify LYB's listings specifically, it is not clear that such behavior would not violate the terms of the parties' settlement agreement. The agreement prohibits Truss from submitting reports to Amazon "concerning LYB, LYB's listings for Truss Products, and/or Truss products sold by LYB." (Compl. ¶36.) The agreement defines a "report" as "a request to remove and or/delist Truss Products for violation(s) of Truss's intellectual property or Amazon's policies, including authenticity, packaging, condition, or description of Truss products." (*Id.* ¶36.) LYB argues that this language was intended to prevent Truss from submitting any reports related to LYB, including reports against an entire product detail page that contains LYB's listings. (Opp. 10.) Truss, on the other hand, takes the position that the language prohibits only the submission of reports that directly target LYB's listings.

Settlement agreements are interpreted in accordance with basic contract principles. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 706 F.3d 217, 223 (3d Cir. 2013) (citing *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000)). Thus, when interpreting a provision in a settlement agreement, the "polestar" is the intention of the parties as revealed by the language used. *See Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 774 (D.N.J. 1999) (citing *Halper v. Halper*, 164 F.3d 830, 840 (3d Cir. 1999)). When the language of the provision is "clear and unambiguous, its meaning 'must be determined from the four corners'" of the agreement. *In re Diet Drugs*, *supra* (quoting *Glenn Distribs. Corp. v. Carlisle Plastics*, Inc., 297 F.3d 294, 300 (3d Cir.2002)). If the language is ambiguous, however, "a court may look to extrinsic evidence to resolve the ambiguity and determine the intent of the parties." *Glenn Distribs.*, 297 F.3d at 300. Contract language is ambiguous where it is "susceptible of more than one

meaning," or "if it is subject to reasonable alternative interpretations." *United States v. Pantelidis*, 335 F.3d 226, 235 (3d Cir. 2003) (citations omitted).

While Truss insists on a narrow construction of the relevant provision, LYB argues that the provision was "meant to be broad," so that Truss would no longer interfere with LYB's relationship with Amazon or its merchant account. (Opp. 9.) LYB explains that the agreement does not prohibit Truss from raising concerns of trademark infringement with LYB individually or in state or federal court; it merely takes "the Amazon reporting tools off the table" because Truss "could not be trusted to use these tools in good faith." (*Id.*) LYB argues that this was a critical provision of the settlement agreement and that it never would have entered into the agreement without this commitment by Truss. (*Id.*)

Courts in this district have routinely denied motions to dismiss breach of contract claims where the meaning of contract terms is uncertain and discovery will aid the Court in ascertaining the parties' objective intent. *See, e.g., Blackberry Ltd. v. PCS Wireless LLC,* No. 15-1070 (KM), 2016 WL 1313161, at *4 (D.N.J. Apr. 4, 2016); *S. Gas, Inc. v. Exxonmobil Oil Corp.*, No. 09-CV-6236, 2016 WL 816748, at *9 (D.N.J. Feb. 29, 2016); *Biovail*, 49 F. Supp. 2d at 775. I will follow suit here, as it is too early to determine whose interpretation of the relevant provision is correct, and LYB has "set forth a compelling argument" that Truss's "narrow interpretation would conflict with what it asserts was the purpose of the [s]ettlement [a]greement." *Biovail, supra.* Moreover, discovery is necessary to determine whether Truss did in fact report entire product detail pages to Amazon or whether it reported LYB's listings specifically. For both reasons, I will allow LYB's breach of contract claim to proceed. The motion to dismiss Count 1 is denied.

### B. Declaratory judgment

In Count 2, Truss seeks a declaration that LYB has not infringed any valid intellectual property rights of Truss. Truss argues that LYB is not entitled to declaratory relief because there is no controversy between the parties. (Opp. 22.)

"The Declaratory Judgments Act provides that a court 'may' declare the rights and other legal relations of any interested party seeking such declaration." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987) (citing 28 U.S.C. § 2201). To warrant issuance of a declaratory judgment, "[t]here must be a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality." *Id.* "The fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination." *Id.*

The complaint demonstrates that LYB does not simply seek advice about whether its activities constitute trademark infringement. To the contrary, LYB has been accused of infringement and seeks to clear its name of these accusations. The complaint alleges that, as a result of the reports submitted by Truss in June 2022, LYB's listings for certain Truss products have been suspended and it is no longer permitted to use the Amazon "buy box" feature on some of its product listings. (Compl. ¶¶86, 97.) A declaration that LYB has not infringed on Truss's trademarks might prompt Amazon to permit LYB to resume selling the de-listed Truss products and to use the "buy box" feature once again. Accordingly, the dispute is of "sufficient immediacy and reality" to warrant issuance of a declaratory judgment. *See Home Racer LLC v. AKRacing Am., Inc.*, No. 2081854CVMIDDLEBROOK, 2021 WL 3419239, at *2 (S.D. Fla. May 12, 2021) (denying motion to dismiss plaintiff's claim for a declaration that its sale of products on Amazon did not constitute trademark infringement or counterfeiting). *See also Square One Ent. Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, No. 20 C 5685, 2021 WL 1253450, at *3 (N.D. Ill. Apr. 5, 2021) (denying motion to dismiss counterclaims for declaratory judgment because "a claim that a defendant sells counterfeit goods is serious and can affect the defendant's business beyond the particular case").

The controversy as alleged is sufficiently concrete to set forth a viable claim for a declaratory judgment. The motion to dismiss Count 2 is denied.

### C. Tortious interference with business relations

In Count 3 of the complaint, LYB asserts that Truss intentionally and improperly interfered with LYB's business relationship with Amazon by notifying Amazon that LYB was selling infringing products. (Compl. ¶¶107-120.) Truss argues that this claim fails because the complaint does not allege sufficient facts to show that Truss acted willfully and because Truss's reports to Amazon are protected by the New Jersey litigation privilege and the *Noerr-Pennington* doctrine. (Mot. 26-29.) As Truss argues that the litigation privilege and *Noerr-Pennington* doctrine also prevent LYB from succeeding on its defamation claim, I will reserve analysis of those issues for Parts III.E and III.F of the opinion.

"The common law cause of action for tortious interference with a prospective economic advantage 'protects the right to pursue one's business, calling, or occupation free from undue influence or molestation.'" *Trans USA Prod., Inc. v. Howard Berger Co.*, No. CIV. A. 07-5924 (JAP), 2008 WL 3154753, at *7 (D.N.J. Aug. 4, 2008) (quoting *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1167 (3d Cir. 1993)). To state a claim for tortious interference under New Jersey law, a plaintiff must allege: (1) an "existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference." *Trans USA*, *supra*, at *7-8 (citing *Lightning Lube*, *supra*).

Truss argues that LYB's tortious interference claim fails on the third element, as LYB's allegations "do not assert any intentional acts by Truss" to interfere with LYB's relationship and Truss did not target LYB specifically. (Mot. 28.) I have already addressed the latter argument and have concluded that it is not suitable for resolution on a motion to dismiss. As to the former argument, the complaint alleges that Truss submitted the June 2022 reports

not because it had a good faith belief that LYB was infringing on its trademarks, but for the anticompetitive purpose of impeding LYB's ability to lawfully resell Truss products. (Compl. ¶93.) This allegation is made plausible by the facts included in the complaint regarding Amazon's procedure for handling trademark infringement reports, as well as LYB's prior suit against Truss for filing false reports, which ended in a settlement. Of course, discovery may reveal that Truss filed the June 2022 reports as a legitimate means to protect its trademark, but at this time I must take the facts alleged in the complaint as true. Doing so, I find that LYB has stated a claim for tortious interference with business relations. The motion to dismiss Count 3 on grounds other than immunity/privilege, *see infra,* is denied.

### D. Defamation

In Count 4 of the complaint, LYB asserts that Truss defamed LYB by publishing false statements about it to Amazon. (Compl. ¶¶121-135.) Again, Truss responds that its reports "unambiguously did not accuse [LYB] of anything but rather w[ere] referencing two ASINs"—an argument that I will reject at this stage of the litigation. (Mot. 24-25.) Truss argues in addition that the complaint fails to allege the actual defamatory statements that it made to Amazon, and that the litigation privilege and *Noerr-Pennington* doctrine shield Truss from liability on the basis of the reports.

"To establish defamation under New Jersey law, a plaintiff must show [that] the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault. *Mangan v. Corp. Synergies Grp.*, Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 79 (App. Div. 2005)). "A defamatory statement is one that is false and 1) injures another person's reputation; 2) subjects the person to hatred, contempt or ridicule; or 3) causes others to lose good will or confidence in that person." *Dendrite Int'l, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 158 (App. Div. 2001) (citing *Romaine v. Kallinger*, 109 N.J. 282, 289 (1988)).

11

Although LYB's defamation claim is brought under New Jersey law, the federal pleading standard governs the sufficiency of the claim. *See Mangan,* 834 F. Supp. at 203. Under Fed. R. Civ. P. 8, "pleadings are to be 'liberally construed,' and alerting the defendant of the allegations made against him is generally sufficient." *Id.* (citing *Palladino ex rel. U.S. v. VNA of S. N.J., Inc.*, 68 F. Supp. 2d. 455, 475 (D.N.J.1999)). Thus, "[a]ccording to Rule 8, a defamation pleading does not need to cite precise defamatory statements, it must only provide notice to the other party of the allegations made against him." *Cristelli v. Filomena II, Inc.*, No. CIV. A. 99-2862 JEI, 1999 WL 1081290, at *3 (D.N.J. Dec. 1, 1999).

Here, LYB reproduced the notifications it received from Amazon about Truss's reports in the complaint. Those notifications are representative of the content of the reports; they reveal that Truss informed Amazon of infringing activities, which then caused Amazon to determine that LYB's listings "may violate [Truss's] intellectual property." (Compl. ¶76.) That is sufficient to put Truss on notice of the claim against it.

Moreover, LYB points out that it is not privy to the full reports submitted by Truss to Amazon. (Opp. 16.) For this reason as well, I will allow the claim to proceed to discovery. The motion to dismiss Count 4 on grounds other than immunity/privilege, *see infra,* is denied.

### E. Litigation privilege

I now turn to Truss's immunity/privilege defenses, beginning with the litigation privilege. "The litigation privilege generally protects an attorney from civil liability arising from words [the attorney] has uttered in the course of judicial proceedings." *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 579 (2006). The privilege applies to any communication "'(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Id.* at 585 (quoting *Hawkins v. Harris*, 141 N.J. 207, 216 (1995).

Truss argues that the reports it submitted to Amazon in June 2022 are shielded by the litigation privilege and thus cannot serve as the basis for liability for defamation or for tortious interference with business relations. (Mot. 25, 27.) I disagree, as the reports were neither made in connection with a judicial or quasi-judicial proceeding, nor were they made to achieve the objects of the litigation.

True, "New Jersey law does not limit the privilege to statements made in a courtroom during trial but extends the privilege to such statements made during settlement negotiations, private conferences with an attorney regarding litigation, and discussions between an investigator-defendant and a witness made during the course of a personal injury litigation." *Source Ent. Grp. v. Baldonado & Assocs.*, P.C., No. CIV A 06-2706 JBS, 2007 WL 1580157, at *7 (D.N.J. May 31, 2007). *See Hawkins*, 141 N.J. at 216; *Ruberton v. Gabage*, 280 N.J. Super. 125, 132–34 (App. Div. 1995); *Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n*, 68 N.J. Super. 85, 92 (App. Div. 1961). Here, however, these reports were made before this litigation commenced and long after the prior litigation between the parties had been resolved. They were therefore not made in connection with any judicial proceeding. *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. CIV.A. 03-1026MLC, 2007 WL 4554208, at *21, n.13 (D.N.J. Dec. 21, 2007), aff'd, 552 F. App'x 110 (3d Cir. 2014) (declining to "extend the privilege to all situations where the relationship between the parties is contentious or adversarial, and it is possible that one of the parties will commence an action in the future.")

In addition, Truss's reports to Amazon were not made to achieve the object of the present litigation. Taking the facts alleged in the complaint as true, the reports were made to interfere with LYB's business relationship with Amazon. But even if the reports were made for the legitimate purpose of reporting infringement, the privilege still would not apply, as it is not an object of the present litigation to enjoin LYB from infringing activities or to obtain damages from LYB for past infringement. The lawsuit at hand was commenced

by LYB, not by Truss, and Truss has not raised any counterclaims for trademark infringement.

In a case involving a similar set of facts, another court in this district rejected the counterclaim defendant's argument that it was immune from liability for statements made to Amazon about the counterclaim plaintiff's alleged intellectual property infringement because the statements were "not sent in connection with a judicial proceeding and not intended to achieve the objects of any litigation." *See Hotaling & Co., LLC v. LY Berditchev Corp.*, No. 20-cv-16366, 2022 WL 1134851, at *2-3 (D.N.J. Apr. 18, 2022) (quotation omitted). There, unlike here, the counterclaim defendant *had* brought claims based on the allegedly infringing activities of the counterclaim plaintiff. Even so, the Court declined to apply the litigation privilege because it was not evident that the counterclaim defendant was "contemplating litigation at the time the statements at issue were made." *Id.* at *3. Given that Truss has not brought any claims against LYB based on LYB's allegedly infringing activities, it is even more apparent that the litigation privilege does not apply in this case. The litigation privilege is therefore rejected as a basis for dismissal of Count 3 or Count 4.

### F. *Noerr-Pennington* doctrine

A cousin of the litigation privilege, the *Noerr-Pennington* doctrine "shields constitutionally protected conduct from civil liability, absent certain exceptions." *Campbell v. Pennsylvania Sch. Boards Ass'n*, 972 F.3d 213, 218 (3d Cir. 2020). "Rooted in the First Amendment and fears about the threat of liability chilling political speech, the doctrine was first recognized in two Supreme Court cases holding federal antitrust laws inapplicable to private parties who attempted to influence government action—even where the petitioning had anticompetitive effects." *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001). Since then, the doctrine has been applied on a limited basis outside of the antitrust context. *Ontel Prod. Corp. v. Zuru LTD.*, No. 17CV3658PGSLHG, 2017 WL 4444198, at *2 (D.N.J. Oct. 5,

14

2017) (citing *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326–27 (3d Cir. 1999)). "The immunity reaches not only to petitioning the legislative and executive branches of government," but also to petitioning the judiciary. *A.D. Bedell, supra.*

"Generally, in order to receive *Noerr–Pennington* immunity, [a defendant] must have petitioned the government for redress." *Ontel Prod.*, 2017 WL 4444198, at *2 (citing *AD Bedell*, 263 F.3d at 250). Truss argues, however, that courts in other jurisdictions have applied the doctrine to defendants who submitted intellectual property infringement notices to Amazon on the ground that such notices are equivalent to conduct incidental to a lawsuit, including a pre-suit demand letter. (Mot. 26.) In line with those decisions, Truss urges the Court to consider the reports it submitted to Amazon in June 2022 as protected petitioning activity that cannot serve as the basis for liability.

Truss relies on two unpublished cases from the Ninth Circuit in which the *Noerr-Pennington* doctrine was applied to bar claims based on infringement notices sent to Amazon. *See Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406, 407 (9th Cir. 2017); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2018 WL 306724, at *9 (N.D. Cal. Jan. 5, 2018). These out-of-circuit cases are not binding on this Court, nor are they even binding on courts in the Ninth Circuit. *See* Ninth Circuit Rule 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent.") In any event, these cases are at odds with a more recent Ninth Circuit decision in which the Court refused to apply the *Noerr-Pennington* doctrine to infringement complaints sent to Amazon. *Thimes Solutions, Inc. v. TP Link USA Corp.*, No. 21-55407, 2022 WL 1125628, at *2 (9th Cir. Apr. 15, 2022). The Court reasoned that, although the doctrine has been extended to "encompass prelitigation settlement demands and cease-and-desist letters sent to potential defendants," there is "no justification to apply" it to communications "delivered solely to a third party and which did not propose or threaten litigation." *Id.*

Another recent decision from within Ninth Circuit came to the same

conclusion as *Thimes*. In *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd*, the U.S. District court for the Southern District of California explained:

> Amazon is a corporation; it is not part of the government. As a result, there is no constitutionally protected right to "petition" Amazon for a redress of grievances. Plaintiff's lawsuit, alleging that Defendants' petitioning conduct was unlawful does not infringe on any of Defendants' constitutionally protected rights. Even though Defendants have a constitutionally protected right to petition the government (via the courts), *see, e.g., Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 341-42, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (concluding that corporations have speech rights under the First Amendment), they do not have a constitutionally protected right to petition Amazon or have that petitioning conduct save them from liability in a lawsuit regarding that petitioning conduct.

525 F. Supp. 3d 1145, 1241 (S.D. Cal. 2021), motion to certify appeal granted, No. 3:18-CV-02109-BEN-LL, 2021 WL 2072382 (S.D. Cal. May 24, 2021), and aff'd sub nom. *Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*, No. 2021-2096, 2022 WL 2232517 (Fed. Cir. June 22, 2022).

I find the reasoning of *Golden Eye* and *Thimes* persuasive. In the absence of Third Circuit authority to the contrary, I will not extend *Noerr-Pennington* immunity to Truss's infringement reports to Amazon. Amazon is not the government; there is no right to petition Amazon with which a civil lawsuit would interfere; and in this particular case, the reports cannot be conceived of as pre-litigation communications because Truss has not filed infringement claims against LYB in any court. *See Ontel Prod.*, 2017 WL 4444198, at *3 (*Noerr-Pennington* doctrine did not apply to false allegations of patent infringement made to Walmart where defendants never "petitioned the government for any redress for purported interference with 'intellectual property rights'").

Even assuming arguendo that *Noerr-Pennington* has some application, LYB might still invoke an exception to that doctrine for "sham" litigation that seeks to "take advantage 'of governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'" *Campbell*, 972

16

F.3d at 218 (quoting *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 123 (3d Cir. 1999)) (emphasis in original). At this stage of the litigation, I must accept as true LYB's allegation that Truss's accusations of infringement "were for the improper purpose of suppressing competition" (Compl. ¶115.) Accordingly, even if Truss had a constitutionally protected right to petition Amazon, I would not dismiss LYB's claims on the ground of *Noerr-Pennington* immunity at this time. *See Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.,* 118 F. Supp. 3d 646, 657 (D.N.J. 2015) (inquiry into whether litigation is a sham turns upon inherently factual issues of reasonableness and intent "which cannot be resolved in the context of a motion to dismiss, and prior to discovery"). *Noerr-Pennington* is therefore rejected as a basis for dismissal of Count 3 or Count 4.

### E. Damages

Finally, Truss makes two arguments related to the sufficiency of the allegations regarding damages. First, Truss argues that the pleadings "do not set forth . . . how [LYB] was injured" (Mot. 24) and asserts that LYB's damages are "speculative in nature" (Resp. 4). I disagree. In a section of the complaint entitled "Harm to plaintiff," LYB outlines how it has been harmed by Truss's actions. It explains that its "listings related to Truss products were suspended, resulting in an immediate loss of revenue;" its "performance metrics were irreparably damaged;" and it lost the buy box feature on many of its product listings. (Compl. ¶¶86-97.) That LYB did not allege the specific dollar amounts lost does not render its damages speculative. *See Tessmar v. Grosner*, 23 N.J. 193, 203, 128 A.2d 467, 472 (1957) (damages are speculative where there is uncertainty "as to the fact of damage and not as to its amount").

Second, Truss argues in its reply brief that LYB has not shown that Truss's actions were the sole cause of any damages. (Resp. 4-6.) Although this argument was not raised in Truss's moving papers, I will address it.

To start, Truss does not indicate which of LYB's claims its causation argument applies to, but based on the cases Truss cites, it appears that the argument may be directed towards the breach of contract claim. A breach of

contract claim under New Jersey law requires "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council,* 964 F.3d 218, 226 (3d Cir. 2020) (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)).

Truss argues that the Court should apply the "but for" test of causation, which requires the non-breaching party to show that but for the breach, the damages alleged would not have been suffered. (Resp. 6.) Yet Truss has not cited any New Jersey authority to support this argument; all of the cited cases are from the Federal Circuit.[3] Moreover, as Truss itself recognizes, causation is generally a question of fact, not suitable for resolution on a motion to dismiss. (*Id.* 5.) Even assuming arguendo that the but-for test applies, discovery is necessary to ascertain whether other forces caused Amazon to remove LYB's listings for Truss products, or whether Truss's actions were the but-for cause of this injury. In the meantime, LYB's claims will not be dismissed for failure to allege damages.

## IV.  Conclusion

For the reasons set forth above, the motion to dismiss (DE 10) is **DENIED**. An accompanying order will issue.

Dated: January 19, 2023

/s/ Kevin McNulty

_____
**KEVIN MCNULTY**
**United States District Judge**

---

[3]    Actually, certain of the cases Truss names are not accompanied by a full citation, and the Court is not inclined to track down the jurisdiction or jurisdictions, from which they issued. The analysis is not affected.